IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BLUEFIELD

FILED
MAR - 6 2006
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v. CRIMINAL NO. 1:05-00126

MAURICE TAFT GIBSON,
also known as "Mo"

# TRIAL MEMORANDUM OF THE UNITED STATES


CHARLES T. MILLER
United States Attorney

MILLER A. BUSHONG III
Assistant United States Attorney
110 North Heber Street
Beckley, West Virginia 25801
(304) 253-6722

## TABLE OF CONTENTS


Page

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. CONTROLLING LEGAL PRINCIPLES/EVIDENTIARY ISSUES

- A. Conspiracy: 21 U.S.C. §846 (Count One) and 18 U.S.C. 1956(h) (Count Eighteen) . . . . . . . . . . . . 8
  - 1. Establishing the Existence of the Conspiracies . . . . . . . . . . . . . . . . . . . . 8
    - a. General Rules . . . . . . . . . . . . . . . . . 8
    - b. Evidence Establishing the Instant Drug Conspiracy . . . . . . . . . . . . . . 11
    - c. Evidence Establishing the Instant Money Laundering Conspiracy . . . . . . . . 12
  - 2. Statements of Co-conspirators Made During and in Furtherance of the Conspiracy . . . . . 13
    - a. General Rules . . . . . . . . . . . . . . . . 13
    - b. Admission of Co-conspirator Statements . . . . . . . . . . . . . . . . . . 15
- B. Hearsay and Crawford Objections as Applied to the Unavailability of Mike White . . . . . . . . . . 17
- C. Foundations and Chain of Custody As It Relates to the Unavailability of Mike White . . . . . . . . . 19
- D. Money Laundering Offenses . . . . . . . . . . . . . . 23
- E. Summary Chart . . . . . . . . . . . . . . . . . . . . 25

## I. INTRODUCTION

The United States has prepared this Trial Memorandum to outline many of the facts it expects to prove at trial, as well as to address pertinent legal principles and evidentiary issues that may arise at trial.

On June 14, 2005, a federal grand jury sitting in Huntington, West Virginia, returned a twenty-count indictment charging five defendants with various crimes. Count One charges four of the five defendants with a drug conspiracy in violation of 21 U.S.C. § 846. Counts Two through Seventeen charge various of the same defendants named in the drug conspiracy with substantive drug distribution crimes in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Eighteen charges Maurice and Tonya Gibson in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). Count Nineteen charges the Gibsons with aiding and abetting a substantive money laundering crime. Count Twenty charges Maurice Gibson with a substantive money laundering crime. The following chart lists the defendants and the particular charges against them:

| **Count/Date** | **Defendant(s)** | **Charge** |
|---|---|---|
| One/<br>September 2002 - May 19, 2005 | Maurice Gibson, Hector Reinat, Christina Arnoto, and Robert Gravely | Conspiracy to distribute cocaine and oxycodone<br>21 U.S.C. § 846 |
| Two/<br>April 20, 2004 | Maurice Gibson | Distribution of oxycodone<br>21 U.S.C. § 841(a)(1) |
| Three/<br>April 26, 2004 | Maurice Gibson | Distribution of oxycodone<br>21 U.S.C. § 841(a)(1) |

| Count/Date | Defendant(s) | Charge |
|---|---|---|
| Four/<br>May 10, 2004 | Maurice Gibson | Distribution of oxycodone<br>21 U.S.C. § 841(a)(1) |
| Five/<br>May 11, 2004 | Maurice Gibson and Hector Reinat | Aiding and abetting distribution of cocaine<br>21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 |
| Six/<br>May 26, 2004 | Hector Reinat | Distribution of five grams or more of cocaine base<br>21 U.S.C. § 841(a)(1) |
| Seven/<br>May 26, 2004 | Hector Reinat | Distribution of cocaine<br>21 U.S.C. § 841(a)(1) |
| Eight/<br>June 10, 2004 | Maurice Gibson and Christina Arnoto | Aiding and abetting distribution of oxycodone<br>21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 |
| Nine/<br>July 27, 2004 | Maurice Gibson and Robert Gravely | Aiding and abetting distribution of oxycodone<br>21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 |
| Ten/<br>September 16, 2004 | Maurice Gibson and Christina Arnoto | Aiding and abetting distribution of oxycodone<br>21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 |
| Eleven/<br>October 27, 2004 | Maurice Gibson | Distribution of cocaine<br>21 U.S.C. § 841(a)(1) |
| Twelve/<br>October 28, 2004 | Maurice Gibson | Distribution of hydromorphone<br>21 U.S.C. § 841(a)(1) |
| Thirteen/<br>February 7, 2005 | Maurice Gibson | Distribution of oxycodone<br>21 U.S.C. § 841(a)(1) |
| Fourteen/<br>March 9, 2005 | Maurice Gibson | Distribution of cocaine<br>21 U.S.C. § 841(a)(1) |
| Fifteen/<br>March 16, 2005 | Maurice Gibson | Distribution of cocaine<br>21 U.S.C. § 841(a)(1) |
| Sixteen/<br>March 17, 2005 | Maurice Gibson | Distribution of cocaine<br>21 U.S.C. § 841(a)(1) |
| Seventeen/<br>April 14, 2005 | Maurice Gibson | Distribution of cocaine<br>21 U.S.C. § 841(a)(1) |
| Eighteen/<br>October 2003 - May 19, 2005 | Maurice Gibson and Tonya Gibson | Money laundering conspiracy<br>18 U.S.C. § 1956(h) |

| Count/Date | Defendant(s) | Charge |
|---|---|---|
| Nineteen/ October 1, 2003 | Maurice Gibson and Tonya Gibson | Aiding and abetting money laundering 18 U.S.C. § 1956(a)(1)(B)(i) and 2 |
| Twenty/ October 14, 2003 | Maurice Gibson | Money laundering 18 U.S.C. § 1956(a)(1)(B)(i) |

The indictment also contains forfeiture provisions, pursuant to 21 U.S.C. § 853(a), 18 U.S.C. § 982(a), and Federal Rules of Criminal Procedure 7(c)(2) and 32.2(a), and premised upon the conviction of a violation of Subchapter I of Title 21, United States Code, as set forth in Counts One through Seventeen of the indictment, and Title 18, United States Code, Section 1956, as set forth in Counts Eighteen through Twenty of the indictment. However, a parallel administrative forfeiture proceeding has resolved the forfeiture issues in this case with the administrative forfeiture of all but one asset listed in the forfeiture counts of the indictment.[1] Accordingly, the United States has filed proposed dismissal orders as to the forfeiture.

[1]The DEA has completed all of the pending administrative forfeiture proceedings against the assets identified in the indictment, except the 2003 Cadillac Escalade, as evidenced by the Declarations of Forfeiture attached to the "United States Motion to Dismiss Property from Forfeiture" filed on March 1, 2006. Tonya Gibson has forfeited her interest in the 2003 Cadillac Escalade under the terms of her plea agreement and no other claims have been filed for the vehicle except by its lienholder, GMAC. This vehicle is still undergoing administrative forfeiture by DEA. The DEA has also completed administrative forfeiture proceedings against the following assets: (1) one 1995 Acura Legend automobile, CATS No. 05-DEA-452190; (2) one 2002 Yamaha Series All-terrain vehicle, CATS No. 05-DEA-452208; (3) one 1995 Jeep Wrangler, CATS No. 05-DEA-452216; (4) one 2002 Homesteader box trailer, CATS No. 05-DEA-452220; (5) one 2001 Kawasaki EX-250F motorcycle, CATS No. 05-DEA-452221; (6) one 2002 Cadillac Escalade, CATS No. 05-DEA-452222; and (7) one 2002 Honda Interceptor Sport Bike, CATS No. 05-DEA-452286.

Only defendant Maurice Gibson proceeds to trial on Tuesday, March 7, 2006. On October 13, 2005, Tonya Gibson pled guilty to Count Nineteen of the indictment (aiding and abetting money laundering). On October 26, 2005, defendant Christina Louise Arnoto pled guilty to Count Eight of the indictment (aiding and abetting the distribution of oxycodone). On October 26, 2005, Robert Gravely pled guilty to Count Nine of the indictment (aiding and abetting the distribution of oxycodone). On February 28, 2006, Hector Reinat pled guilty to Count Six of the indictment (distribution of five grams or more of cocaine base).

On March 6, 2006, the United States moved to dismiss without prejudice Counts Fifteen through Seventeen of the indictment. Counts Six and Seven of the indictment are not relevant to Maurice Gibson's trial. Accordingly, the United States will proceed to trial and present evidence on Counts One through Five, Counts Eight through Fourteen, and Counts Eighteen through Twenty.

## II. FACTS

Maurice Gibson became the target of investigation by the Southern Regional Drug and Violent Crime Task Force ("Task Force") in late 2002. Law enforcement agents began collecting intelligence regarding Maurice Gibson, his drug dealing, and his accumulation of assets. However, it was not until early 2004 that law enforcement agents developed a cooperating individual ("CI") who could purchase drugs directly from Maurice Gibson. That CI was Mike White.

In early 2004 Mike White approached the West Virginia State Police. He was interested in working as a CI. The West Virginia State Police referred him to Detective Ted Jones of the Bluefield Police Department and Task Force. White was a tattoo artist who operated a tattoo shop called "Dragon's Den" off of Route 460 near Princeton. White's motivation in approaching law enforcement was his son. White explained to Detective Jones that his son had become addicted to drugs at the hands of local drug dealers, and he wanted to do what he could to put an end to it.

White advised Detective Jones that individuals known to him as "Mo" and "Chico" frequently came into his tattoo shop and had suggested that together they could "make some money." Maurice Gibson's nickname is "Mo" and Hector Reinat's nickname is "Chico." White further explained to Detective Jones that Christina Arnoto, also known as "Tina Arnoto," was an associate of Maurice Gibson. Tina Arnoto operated a business called "Psychedelic Dreams," a head shop, located adjacent to the tattoo parlor. Detective Jones and Special Agent E. H. Kennedy of the Drug Enforcement Administration ("DEA") assisted White in completing the necessary paperwork to register as a CI. White did this in March 2004. Thereafter, White worked closely with Detective Jones and Special Agent Kennedy.

In April 2004 Mike White asked Tina Arnoto to have Maurice Gibson contact him or to come by his shop. On April 20, 2004, White made his first controlled buy from Maurice Gibson. White

purchased a quantity of oxycodone from Gibson. The controlled buy was recorded on audio and video tape. Including and between April 20, 2004, and May 19, 2005, White made multiple controlled buys from defendants. Prior to many of the controlled buys, White made recorded telephone calls setting up the buy. Further, prior to the controlled buys law enforcement agents conducted routine pre-buy procedures with White, such as pre-buy searches, equipping him with audio and video recording devices, and providing him with buy money. Before each of the controlled buys, law enforcement agents conducted surveillance from positions overlooking the tattoo shop. Following each controlled buy, law enforcement agents conducted routine post-buy procedures. They met with White, recovered the purchased controlled substance, and discussed the events of the buy with White. A report was prepared after each controlled buy, and the drugs were tested at the DEA lab in Washington, D.C.

Over the course of thirteen months, law enforcement agents utilized White to make multiple controlled buys of oxycodone, hydromorphone, and cocaine from defendants.

In January 2005, Special Agent Kennedy submitted an application and affidavit for a wire tap on a phone used by Maurice Gibson. This Court authorized the wire tap on January 26, 2005, and the United States intercepted Maurice Gibson's telephone calls starting February 1, 2005, and continuing for a period of thirty

days. Thereafter, on March 2, 2005, upon application, this Court renewed the wire tap for an additional thirty days.

The investigation of Maurice Gibson and others came to an abrupt end on May 19, 2005, when in the early afternoon of that day, Mike White was murdered on the parking lot of his tattoo shop. He was shot one time in the chest. The United States Attorney's Office for the Southern District of West Virginia continues to investigate the homicide of this Drug Enforcement Administration cooperating individual.

On June 14, 2005, Maurice Gibson and the other defendants in this case were indicted and charged with drug and money laundering crimes. The United States intends to prove the drug and money laundering crimes with the evidence developed during the course of the above-described investigation, including the multiple audio and video controlled buys developed by CI Mike White prior to his murder, and by any other evidence deemed admissible under the Federal Rules of Evidence and the Federal Rules of Criminal Procedure.

## III. CONTROLLING LEGAL PRINCIPLES

### A. Conspiracy: 21 U.S.C. §846 (Count One) and 18 U.S.C. 1956(h) (Count Eighteen)

#### 1. Establishing the Existence of the Conspiracies

##### a. General Rules

As noted, Counts One and Eighteen of the indictment charge Maurice Gibson and others with conspiring to commit crimes. A conspiracy is a combination of two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. United States v. Falcone, 311 U.S. 205, 210 (1940); see also United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996)("the gravamen of the crime of conspiracy is an *agreement* to effectuate a criminal act")(italics in original), cert. denied, 519 U.S. 1151 (1997). Thus, to convict the defendant of conspiracy, the United States must prove (a) an agreement to do something illegal; (b) willing participation by the defendant; and with respect to the money laundering conspiracy (c) that, in the furtherance of an objective or purpose of the conspiracy, one of the defendants committed one or more of the overt acts alleged in the indictment.[2] United States v. Dozie, 27 F.3d 95, 97 (4th Cir. 1994); United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied, 484 U.S. 969 (1987).

[2]Proof of an overt act in furtherance of the conspiracy is not required to sustain a drug conspiracy conviction. United States v. Shabani, 513 U.S. 10 (1994)

Because of its clandestine, covert nature, a conspiracy can rarely be proved by direct evidence, and the government need not prove an explicit agreement. Rather, conspiracy is most often proved by circumstantial evidence, and may be established by "events too interlocked to constitute coincidence." Iannelli v. United States, 420 U.S. 770, 777 n.10 (1975); Burgos, 94 F.3d at 857. "Circumstantial evidence tending to prove a conspiracy may consist of a defendant's 'relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy.'" Id. at 858 (citation omitted). Furthermore, circumstantial evidence "need not exclude every reasonable hypothesis of innocence, provided a summation of the evidence permits a conclusion of guilt beyond the reasonable doubt." Id.

Once the existence of the conspiracy is shown, slight evidence is all that is needed to connect a co-conspirator with it. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 505 U.S. 1228 (1992). It is not necessary to show that each co-conspirator was aware of all the details of the conspiracy. Blumenthal v. United States, 332 U.S. 539, 557 (1947). "[A] conspiracy can have an elusive quality and . . . a defendant may be convicted of conspiracy with little or no knowledge of the entire breadth of the criminal enterprise[.]" Burgos, 94 F.3d at 858.

"[T]he fact that a conspiracy is loosely-knit, haphazard, or ill-conceived does not render it any less a conspiracy." Id.

In addition, a defendant need not have knowledge of all of his co-conspirators, or of the details of the conspiracy. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc), cert. denied, 519 U.S. 1151 (1997). Complete knowledge is not a prerequisite to a conviction. Thus, "one may become a member of the conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part." United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989).

Once begun, moreover, a conspiracy does not terminate simply because some members may drop out. See, e.g., United States v. Grubb, 527 F.2d 1107, 1109 (4th Cir. 1975)("Arrest of some co-conspirators does not, as a matter of law, terminate a conspiracy."). And, after joining a conspiracy, a defendant's membership is presumed to continue until he or she "withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy. If the defendant produces such evidence, the issue of withdrawal goes to the jury, and the government must then prove beyond a reasonable doubt that the defendant did not withdraw

from the conspiracy." United States v. West, 877 F.2d 281, 289 (4th Cir.), cert. denied, 493 U.S. 959 (1989).

A defendant may be held responsible for, and indeed, convicted of substantive offenses committed by a co-conspirator if the evidence establishes that the defendant was a member of the conspiracy and that the substantive offenses were committed in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-48 (1946); United States v. Chorman, 910 F.2d 102, 110-11 (4th Cir. 1990).

**b. Evidence Establishing the Instant Drug Conspiracy**

The United States alleges in the indictment that the drug conspiracy began in September of 2002 and continued on until May 19, 2005. However, the United States will present evidence during the course of the trial establishing that the drug conspiracy began even prior to September of 2002. For example, the United States will play an audio tape recorded on June 10, 2004, on which Maurice Gibson states he "trained" Reinat for the past six years and that everything Reinat owns is thanks to Gibson. The fact that the drug conspiracy began as far back as 1999 will become important in the discussion of the money laundering conspiracy below.

The United States will rely on evidence supporting the following facts to establish a beginning point for the conspiracy for purposes of thereafter offering co-conspirator statements. On

September 20, 2002, co-defendant Hector Reinat was stopped for speeding in Maryland. He gave a fictitious name and stated that he was traveling between New York and Bluefield, West Virginia. He was arrested following the seizure of over 1,200 oxycodone tablets hidden in a secret compartment within his vehicle. At Reinat's bond hearing a relative named Carlos Parrilla and Maurice Gibson appeared and posted his bond. Once released, Parrilla and Reinat traveled together to New York City. Maurice Gibson followed them there in his vehicle. The United States proffers to the Court that it will present additional evidence (e.g., the above-referenced June 10, 2004, audio tape) connecting up and further supporting the events in Maryland as evidence of Gibson and Reinat's criminal partnership.

**b. Evidence Establishing the Instant Money Laundering Conspiracy**

With respect to the alleged money laundering conspiracy, Maurice and Tonya Gibson's assets, both real and personal, are important evidence. The money laundering conspiracy is alleged to have begun from at least October 2003 through May 19, 2005. However, the United States has gathered numerous documents and other evidence pre-dating October 2003 which support the money laundering conspiracy. The United States argues that admission of such documents and other testimony is admissible, not as 404(b) evidence, but as substantive evidence demonstrating the same course of conduct and otherwise completing the conspiracy's story.

That is, evidence of "other crimes" should be distinguished from "evidence of uncharged conduct . . . [arising] out of the same series of transactions as the charged offense or [evidence that] is necessary to complete the story of the crime on trial." United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994) (approving evidence of criminal conduct involving uncharged individuals which took place a year before the charged conspiracy period, without resource Rule 404(b)), cert. denied, 513 U.S. 1128 (1995); *Accord* United States v. Lipford, 203 F.3d 259 (4th Cir. 2000) ("acts intrinsic to the crime charged" are not governed by Rule 404(b)). For example, the Gibsons purchased one of their two Cadillac Escalades in 2001. The United States will seek to introduce evidence regarding that purchase to support the money laundering conspiracy as "same series transactions" and "intrinsic to the crime" evidence.

### 2. Statements of Co-conspirators Made During and in Furtherance of the Conspiracy

#### a. General Rules

Because a conspiracy is a partnership in crime the declarations of each conspirator made in furtherance of the conspiracy are deemed to be the declarations of all conspirators. Fed. R. Evid. 801(d)(2)(E) provides that statements made by co-conspirators during the course of, and in furtherance of, a conspiracy are not hearsay and are admissible against all conspirators. See also United States v. Neal, 78 F.3d 901, 905

(4th Cir.), cert. denied, 519 U.S. 855 (1996). This rule also applies to unindicted co-conspirators. See United States v. Lewis, 759 F.2d 1316, 1347 (8th Cir.), cert. denied, 474 U.S. 994 (1985).

> The Government merely needs to demonstrate that the declarant and the defendants against whom the statements are offered are members of a conspiracy in furtherance of which the statements are made, and that this conspiracy is "factually intertwined" with the *offenses* being tried.

United States v. Grossman, 843 F.2d 78, 83 (2d Cir. 1988) (emphasis in original, citations omitted), cert. denied, 488 U.S. 1040 (1989). Proof of the existence of a conspiracy involving the declarant and the party against whom admission of the statement is sought and that the statement was made in furtherance of the conspiracy need be shown only by a preponderance of the evidence. Neal, 78 F.2d at 905.

Under the rule, admissible statements made during the conspiracy--but uttered before a specific defendant joined the conspiracy--may nevertheless be admitted against the later-joining member as well as those in the conspiracy at the time of the declaration. United States v. United States Gypsum Co., 333 U.S. 364, 393 (1948); United States v. Kaplan, 832 F.2d 676, 685 (1st Cir. 1987), cert. denied, 485 U.S. 907 (1988). This is so because a person joining a conspiracy adopts both the prior actions of his confederates as well as their prior conspiratorial declarations. United States v. Gypsum Co., 333 U.S. at 393; United States v.

Baines, 812 F.2d 41, 42 (1st Cir. 1987). As explained by Judge Bailey Aldrich, in Baines:

> [A] conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight-- or conduct-- regardless of whether he is aware of just what it is composed.

Id.; see also United States v. Broome, 732 F.2d 363, 364 (4th Cir.) ("*any* out-of-court statement made by a co-conspirator during the course and in furtherance of the conspiracy may be used against *any* other conspirator")(emphasis supplied), cert. denied, 469 U.S. 855 (1984).

**b. Admission of Co-Conspirator Statements**

In determining the admissibility of co-conspirator statements the court shall consider the proffered co-conspirator statement itself. Fed. R. Evid. 801(d)(2). As noted above, the court and not the jury determines whether the requirements of Fed. R. Evid. 801(d)(2)(E) have been met, by applying a preponderance of the evidence standard. Bourjaily v. United States, 483 U.S. 171, 175 (1987); Neal, 78 F.3d at 905. The court may, in its discretion, conditionally admit such statements, subject to a later motion to strike. United States v. Blevins, 960 F.2d 1252, 1256 (4th Cir. 1992).

One recurring issue is whether certain statements were made in furtherance of the conspiracy. "Although this phrase has a

talismanic ring to it, we must not apply the standard too strictly, lest we defeat the purpose of the exception." United States v. Rodriguez, 689 F.2d 516, 519 (5th Cir. 1982)(citations omitted). Thus, courts have "shunned an overly literal interpretation of this [phrase]." United States v. Ascarrunz, 838 F.2d 759, 763 (5th Cir. 1988). For example, in Neal, the Fourth Circuit held that although the declarant's statements (that a sale would not take place due to police presence in the neighborhood and that when the defendant tells him "not to move anything, he don't move nothing") did not further the cause of a particular drug deal, they did further the cause of the conspiracy. Neal, 78 F.3d at 905. Similarly, the Fourth Circuit has taken a dim view of defendants' contentions that co-conspirators' statements were mere "idle chatter" and therefore inadmissible. See, e.g., United States v. Howard, 115 F.3d 1151, 1156 (4th cir. 1997)(conversations with nephew while in jail about drug transactions, indicating active interest in mechanics and operation of conspiracy); United States v. Lewis, 10 F.3d 1086, 1091-92 (4th Cir. 1993).[3]

[3] In addition, the following statements have been found to be in furtherance of a conspiracy: (1) narrative statements by one co-conspirator to another reporting the activities of the group (United States v. Cambindo-Valencia, 609 F.2d 603, 632 (2d Cir. 1979), cert. denied, 446 U.S. 940 (1980)); (2) "recruiting" statements to bring new members into the group (United States v. Shoffner, 826 F.2d 619, 628 (7th Cir.), cert. denied, 484 U.S. 958 (1987)); (3) statements which were "part of the information flow between conspirators intended to help each perform his role" (United States v. Van Daal Wyk, 840 F.2d 494, 499 (7th Cir. 1988)); (4) assurances to another conspirator that a member of the group can be trusted to perform his role where concealment is the aim of the conspiracy (United States v. Buishas, 791 F.2d 1310, 1315 (7th Cir. 1986)).

Finally, co-conspirator statements should be admissible even if they are susceptible to alternative interpretations. And co-conspirator statements need not have been made exclusively, or even primarily, to further the conspiracy. Shoffner, 826 F.2d at 628.

### B. Hearsay and Crawford Objections as Applied to the Unavailability of Mike White

The United States intends to introduce evidence, namely the controlled buys set out in Counts Two through Five and Counts Eight through Fourteen, in which Mike White participated. Mike White's image appears on all of the controlled buy video recordings, and Mike White's voice can be heard on all of the controlled buy audio recordings including "set up" calls made before some of the controlled buys. Mike White is unavailable for trial because he died on May 19, 2005.

The United States anticipates continuing objections to the evidence containing statements of Mike White on the basis of hearsay and Crawford v. Washington, 541 U.S. 36 (2004). The United States will not offer the audio and video recordings containing statements by Mike White for the truth of the matters asserted by White. The United States will offer these recordings to establish the context of the *statements or subsequent actions of defendants* who were selling Mike White the controlled substances. That is, the United States will not offer this evidence to prove what Mike White said was true, but rather to show the incriminating value of defendant's statements to Mike White or the incriminating value of

defendants' actions taken following messages from Mike White. Accordingly, it is not hearsay. See United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985) (informants' statements in taped conversations were not hearsay because they were not admitted for the truth but to enable jury to understand defendant's recorded statements).

Finally, Crawford applies only to "testimonial" statements. United States v. Iskander, 407 F.3d 232, 240 (4th Cir. 2005). Defendant's broad assertion that Crawford "prohibits the introduction of out-of-court statements of anyone who does not appear unless the defendant has an opportunity to cross-examine that witness" is not an accurate statement of law. Mike White's statements as contained on the controlled buy audio recordings were made during the context of controlled buys. These statements are not testimonial in nature, nor are they hearsay, and the Confrontation Clause is not implicated.

The Third Circuit addressed this issue with facts very similar to this case in United States v. Hendricks, 395 F.3d 173 (3d Cir. 2005). In Hendrick the Court held that statements made to a CI who recorded those statements unbeknownst to defendants were not testimonial. The Court did not address whether statements of the CI himself were testimonial, but did find that such statements were not offered for the truth of the matter asserted; that is, such statements were not hearsay because they were only offered to

provide context for defendants' statements, and therefore the Confrontation Clause did not apply to those statements. See also, United States v. Puryear, No. 04-50125, 2005 WL 513530 (9th Cir. March 4, 2005) (Crawford v. Washington is inapplicable, and the Confrontation Clause is not implicated because the CI's statements on the tape recordings were not offered for their truth.).

**C. Foundations and Chain of Evidence as it Relates to the Unavailability of Mike White**

The United States anticipates objections to the admission of audio and video evidence containing the voice and image of Mike White. The United States intends to lay a proper foundation for the admission of the audio and video recordings in this case. The audio and video recordings were made under the close supervision of law enforcement agents. Law enforcement agents will be able to testify regarding the production of the audio and video recordings, including dates, times, and meetings with Mike White shortly before and after each of the recordings was created. The law enforcement agents testifying regarding foundation will be able to identify White's image, his voice, and will testify that the audio and video recordings have not been changed or altered since their creation (other than cropping for purposes of trial). See, United States v. Long, 651 F.2d 239, 243 (4th Cir. 1981); and United

States v. West, 574 F.2d 1131, 1137 (4th Cir. 1978) (admission of edited versions of tapes and transcripts is permissible).[4]

The United States anticipates objections to the admission of drug evidence in which Mike White is in the chain of custody. That is, the defense may argue that the unavailability of Mike White is a fatal flaw in the chain. The United States disagrees. A perfect or complete chain of custody is not required. Rather, it is sufficient to satisfy the court that the item is what it purports to be and has not been altered. United States v. Howard-Arias, 679 F.2d 363 (4th Cir.), cert. denied, 459 U.S. 874 (1982). Breaks in the chain of custody go to weight, not admissibility.

The United States anticipates offering 42 audio and/or video exhibits, and 12 drug exhibits. These exhibits have been pre-marked 1-54. As an aid to counsel and the Court, the United States offers the following chart organizing this evidence by Count and Government Exhibit number:

| COUNT | AUDIO AND VIDEO EXHIBIT | CHAIN AND DRUG EXHIBIT |
|---|---|---|
| One - September 2002 - May 19, 2005<br>Maurice Gibson<br>Hector Reinat<br>Christina Arnoto<br>Robert Gravely<br>Conspiracy to distribute cocaine and oxycodone | N/A | Hector Reinat → Trooper Christopher Conner → Chemist Berta Tsimerman<br><br>Drug Exhibit 43 |

[4] If the Court overrules defendant's foundation objection to the audio and video evidence, finding that a proper foundation was laid, the parties are in agreement regarding the presentation of this evidence. That is, if admissible, there is no objection to the cropped and edited versions of the tapes, nor is there objection to the transcripts accompanying the audio and/or video.

| COUNT | AUDIO AND VIDEO EXHIBIT | CHAIN AND DRUG EXHIBIT |
|---|---|---|
| Two - April 20, 2004<br>MG (Defendant Maurice Gibson)<br>Distribution oxycodone | Exhibit 1. 4/20 Hawk video<br>Exhibit 2. 4/20 Ceiling video | MG (Maurice Gibson) ➜ MW (Mike White - cooperating individual) ➜ EH (Special Agent E.H. Kennedy) ➜ NN (Chemist Norman Newby)<br><br>Drug Exhibit 44 |
| Three - April 26, 2004<br>MG<br>Distribution oxycodone | Exhibit 3. 4/26 Hawk video<br>Exhibit 4. 4/26 Ceiling video | MG ➜ MW ➜ EH ➜ NN<br><br>Drug Exhibit 45 |
| Four - May 10, 2004<br>MG<br>Distribution oxycodone | Exhibit 5. 5/10 Set up call<br>Exhibit 6. 5/10 Hawk video<br>Exhibit 7. 5/10 Ceiling video<br>Exhibit 8. 5/10 Audio only (Tina Arnoto payoff)<br>Exhibit 9. 5/10 Ceiling video (TA payoff) | MG ➜ MW ➜ EH ➜ NN<br><br>Drug Exhibit 46 |
| Five - May 11, 2004<br>MG a & a HR (Hector Reinat)<br>A & a distribution cocaine | Exhibit 10. 5/11 Set up call to MG<br>Exhibit 11. 5/11 Hawk video<br>Exhibit 12. 5/11 Ceiling video<br>Exhibit 13. 5/14 Set up call to MG<br>Exhibit 14. 5/14 Hawk video (HR payoff)<br>Exhibit 15. 5/14 Ceiling video (HR pay-off) | HR ➜ MW ➜ EH ➜ NN<br><br>Drug Exhibit 47 |
| June 3, 2004 (relevant to drug conspiracy) | Exhibit 16. 6/3 First call to HR<br>Exhibit 17. 6/3 Second call to HR | Not applicable |

| COUNT | AUDIO AND VIDEO EXHIBIT | CHAIN AND DRUG EXHIBIT |
|---|---|---|
| Eight - June 10, 2004<br>MG a & a TA (Tina Arnoto)<br>A & a distribution oxy-codone | Exhibit 18. 6/10 Audio only (MG, TA, MW snitch meeting)<br>Exhibit 19. 6/10 Audio only (TA comes in gives 100 OC)<br>Exhibit 20. 6/10 Ceiling video (TA comes in gives 100 OC)<br>Exhibit 21. 6/11 Hawk video (next day MG payoff)<br>Exhibit 22. 6/11 Ceiling video (next day MG payoff) | (MG) ➔ TA ➔ MW ➔ EH ➔ JE (Chemist Jamie Eshelman)<br><br>Drug Exhibit 48 |
| Nine - July 27, 2004<br>MG a & a RG (Robert Gravely)<br>A & a distribution oxy-codone | Exhibit 23. 7/26 Set up call<br>Exhibit 24. 7/27 Video surveillance (RG's sports jersey and MG)<br>Exhibit 25. 7/27 Hawk video (RG's sports jersey)<br>Exhibit 26. 7/27 Ceiling video RG's sports jersey) | (MG) ➔ RG ➔ MW ➔ EH ➔ JE<br><br>Drug Exhibit 49 |
| Ten - September 16, 2004<br>MG a & a TA<br>A & a distribution oxy-codone | Exhibit 27. 9/16 Set up call (TA)<br>Exhibit 28. 9/16 Hawk video<br>Exhibit 29. 9/16 Ceiling video | MG ➔ MW ➔ TJ (Detective Ted Jones) ➔ EH ➔ CK (Chemist Christo-pher Krug)<br><br>Drug Exhibit 50 |

| COUNT | AUDIO AND VIDEO EXHIBIT | CHAIN AND DRUG EXHIBIT |
|---|---|---|
| Eleven - October 27, 2004<br>MG<br>Distribution cocaine | Exhibit 30. 10/27 Set up call<br>Exhibit 31. 10/27 Hawk video (before MG goes to SOS (source of supply))<br>Exhibit 32. 10/27 Hawk video (telephone call between MG and SOS)<br>Exhibit 33. 10/27 Hawk video (after MG gets back from SOS)<br>Exhibit 34. 10/27 Ceiling video | MG → MW → EH → CK<br><br>Drug Exhibit 51 |
| Twelve - October 28, 2004<br>MG<br>Distribution hydromor-phone | Exhibit 35. 10/28 Hawk video<br>Exhibit 36. 10/28 Ceiling video | MG → MW → EH → CK<br><br>Drug Exhibit 52 |
| Thirteen - February 7, 2005<br>MG<br>Distribution oxycodone | Exhibit 37. 2/7 Set up call<br>Exhibit 38. 2/7 Hawk video<br>Exhibit 39. 2/7 Ceiling video | MG → MW → EH → JE<br><br>Drug Exhibit 53 |
| Fourteen - March 9, 2005<br>MG<br>Distribution cocaine | Exhibit 40. 3/8 Hawk video<br>Exhibit 41. 3/9 Hawk video<br>Exhibit 42. 3/9 Ceiling video | MG → MW → TJ → EH → CK<br><br>Drug Exhibit 54 |

### D. Money Laundering Offenses

The money laundering offenses allege concealment. Concealment need not be the only motive in conducting the transactions. See e.g., United States v. Wynn, 61 F.3d 921, 924 (D.C. Cir.) (defendant who spends drug proceeds with intent to conceal or disguise may simultaneously intend to enjoy the fruits of his illegal activity), cert. denied, 516 U.S. 1015 (1995). The concealment aspect can include engaging in unusual or convoluted

transactions, which merely imply knowledge that their purpose was to conceal or disguise. See, e.g., United States v. Massac, 867 F.2d 174, 178 (3d Cir. 1989) (sending $22,000 in cash through a cash transmitting business over a five month period).

Finally, in a money laundering charge, the United States is not required to prove that all of the money used in the financial transaction was illegally obtained. United States v. Wilkinson, 137 F.3d 214, 222 (4th Cir.), cert. denied, 525 U.S. 873 (1998). When illegally obtained funds are combined with lawfully obtained funds, the funds can no longer be distinguished from each other. United States v. Moore, 27 F.3d 969, 976-77 (4th Cir.), cert. denied, 513 U.S. 979 (1994). Were the United States required to trace each dollar in a transaction to an illegal origin, individuals could effectively defeat prosecution simply by commingling illegitimate funds with legitimate ones. Id. at 977. For that reason, the United States need only prove that part of the money in a money laundering transaction originated from illegal activity. Wilkinson, 137 F.3d at 222. Thus, "when the funds used in a particular transaction originated from a single source of commingled, legally- and illegally-acquired funds, it may be presumed that the transacted funds, at least up to the full amount originally derived from crime, were the proceeds of criminal activity." Id.

## E. Summary Chart

Pursuant to Fed. R. Evid. 1006, the United States anticipates presenting in its case-in-chief certain summary evidence in the form of a summary chart. The use of "summary charts" is approved, and encouraged, especially when there are numerous documents or other items being summarized. See, e.g., United States v. Loayza, 107 F.3d 257, 264 (4th Cir. 1997). "Summary charts are admissible if they aid the jury in ascertaining the truth. The complexity and length of the case as well as the numbers of witnesses and exhibits are considered in making that determination." Id. In contrast to traditional demonstrative evidence, such charts and summaries are themselves the evidence. See, e.g., United States v. Nivica, 887 F.2d 1120, 1125-26 (1st Cir. 1989)(summaries of banking activities), cert. denied, 494 U.S. 1005 (1990); United States v. Massachusetts Maritime Academy, 762 F.2d 142, 157 (1st Cir. 1985)(summaries of the academy's applicant files). After admission under Rule 1006, the charts and summaries may be used by the jury during deliberations like any other piece of evidence. United States v. Koskerides, 877 F.2d 1129, 1134 (2d Cir. 1989).

The chart or summary must be based on *admissible* evidence, but the underlying documents or items need not be actually admitted. United States v. Strissel, 920 F.2d 1162, 1164 (4th Cir. 1990). The underlying documents must be made available for inspection by the other party. Id. In this case, the summary chart to be

offered by the United States is based on documents turned over or made available for inspection to the defendants.

Although the chart or summary must accurately and fairly reflect the contents of the documents and testimony being summarized, there is no requirement that a chart include the opponent's version of the evidence or his theory of the case. United States v. Montilla Ambrosiani, 610 F.2d 65, 68 n.2 (1st Cir. 1979), cert. denied, 445 U.S. 930 (1980); Myers v. United States, 356 F.2d 469, 470 (5th Cir.), cert. denied, 384 U.S. 952 (1966). The headings and captions on the summary chart may be grounded on assumptions about the underlying evidence, so long as the chart, and the assumptions in it, remain a summary of evidence. United States v. Diez, 515 F.2d 892, 905 (5th Cir. 1975), cert. denied, 423 U.S. 1052 (1976). In light of this rule, the proponent of the chart has wide latitude in constructing his charts.[5]

To assist the jury in the examination of financial records and other evidence that will be introduced to prove the money laundering charges in the indictment, the United States intends to rely on a summary witness. A summary witness will testify in connection with the summary chart. The use of such witnesses under these circumstances has been consistently approved by the courts.

---

[5]United States v. Lacob, 416 F.2d 756, 762 (7th Cir. 1969)(chart upheld which used caption or heading "Total Net Unreported Income"), cert. denied, 396 U.S. 1059 (1970); Diez, 515 F.2d at 905 (chart upheld which used caption or heading "Schedule of Sales, Net Taxable Gains to Peter A. Palori and Amounts Not Reported or Taxable Gain Reported by Others"); United States v. Smyth, 556 F.2d 1179, 1182-84 (5th Cir.)(chart upheld which used caption or heading "falsified data" and "difference between original/false"), cert. denied, 434 U.S. 862 (1977).

United States v. Johnson, 319 U.S. 503, 519 (1943); Koskerides, 877 F.2d at 1134; United States v. Behrens, 689 F.2d 154, 161 (10th Cir.), cert. denied, 459 U.S. 1088 (1982); United States v. Scales, 594 F.2d 558, 563 (6th Cir.), cert. denied, 441 U.S. 946 (1979). The United States has disclosed all of the underlying evidence supporting the summary chart as well as the chart itself to counsel.[6]

Respectfully submitted,

CHARLES T. MILLER
United States Attorney

By: ______________________
MILLER A. BUSHONG III
Assistant United States Attorney

[6]Counsel for defendant has agreed not to require the United States to produce merely custodial witnesses. That is, if a summary document is deemed relevant and otherwise admissible by the Court, it may be introduced through IRS Special Agent Steve Dempsey, the government's summary witness.

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing "TRIAL MEMORANDUM OF THE UNITED STATES" has been made on opposing counsel by faxing and mailing a true copy thereof, on the 6th day of March, 2006, to the following counsel of record:

Gary A. Collias, Esquire
Post Office Box 70007
Charleston, West Virginia 25301

Jay T. McCamic, Esquire
McCamic, Sacco & McCoid
56-58 Fourteenth Street
Wheeling, West Virginia 26003

MILLER A. BUSHONG III
Assistant United States Attorney